**Mary ALLEN, Plaintiff—Appellant,**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security, Defendant—Appellee.**

No. 04–55898.

United States Court of Appeals, Ninth Circuit.

Submitted Feb. 17, 2006.*

Decided April 13, 2006.

Henry N. Ernecoff, Esq., Law Office of Henry N. Ernecoff, San Diego, CA, for Plaintiff–Appellant.

Nancy M. Lisewski, Social Security Administration Office of the General Counsel, San Francisco, CA, for Defendant–Appellee.

Before: B. FLETCHER, TASHIMA, and CALLAHAN, Circuit Judges.

MEMORANDUM **

Appellant Mary Allen sought disability benefits based, *inter alia,* on anxiety neurosis (depression). She appeals the district court's grant of summary judgment affirming the Social Security Commission-

---

\* This panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

\*\* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

er's ("Commissioner") denial of benefits. We affirm.

We review the district court's decision to uphold the Commissioner's denial of benefits de novo, *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir.1989); however, we review the Commissioner's decision for substantial evidence. *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir.1997). Under the substantial evidence standard, we must affirm where there is such relevant evidence as reasonable minds might accept as adequate support for a conclusion, even if it is possible to draw contrary conclusions from the evidence. *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1011 (9th Cir. 2003).

During the proceedings before the Commissioner and on administrative appeal before an Administrative Law Judge ("ALJ"), Allen offered evidence of disability based on two conditions: (1) a back injury that occurred while she was working as a caregiver; and (2) depression. On appeal, Allen challenges the ALJ's determination that she "had no severe psychiatric limitations," but she does not challenge the ALJ's conclusion that physically she had the residual functional capacity for light work. Thus, our substantial evidence analysis is limited to the evidence in the record regarding Allen's depression.

The ALJ concluded that Allen was not entitled to disability benefits because her psychiatric impairment was not, alone or in combination with her physical limitations, sufficiently severe to render her unable to perform her past relevant work. In reaching this conclusion, the ALJ discounted the initial report of Allen's treating psychiatrist, Dr. Henderson, who diagnosed her with moderate depression, and Allen's claim that there was no evidence of im-

provement. The ALJ relied on Dr. Henderson's notations that Allen's "energy seems to be doing okay, appetite is fair, [and] memory and concentration are improving" and that Allen was "taking an active role in searching for numerous programs for employment or training." The ALJ also noted that although Dr. Henderson found Allen to be moderately limited in most areas of functioning in an "undated" report received in July 2002,[1] at that time Allen had been working for six months as a transcriber at a Public Defender's office. The ALJ concluded that Dr. Henderson's assessment of Allen's limitations was inconsistent with Allen's own behavior.

The ALJ also relied on the report by the Social Security's psychiatrist, Dr. Glassman, who interviewed Allen and observed that she was able to "maintain concentration, persistence and pace," and that she "does not appear to be permanently and totally disabled from a psychiatric perspective. She seems capable of behaving in a socially appropriate manner, following simple directions, maintaining persistence and pacing from a psychiatric perspective." Additionally, reports from state agency doctors who examined Allen, also supported the ALJ's findings. For example, Dr. Giraldi noted that Allen's affective disorder "imposed no severe limitations;" and Dr. Tiedeman observed that Allen is "not permanently disabled from psych (sic), can behave appropriately, follow simple directions, and maintain pace and persistence ... [a]ppears to be non-severe." In light of the additional supporting evidence provided by Allen's examining physicians, the dissent's reliance on *Moore v. Commissioner of the Social Security Administration*, 278 F.3d 920 (9th Cir.2002) is misplaced.[2]

---

1. The ALJ stated that Dr. Henderson's report was not dated; however, the record indicates that the report was completed on July 18, 2002.

2. In *Moore,* two examining physicians diag-

Viewing the record as a whole, a reasonable mind might accept this evidence as adequate to support the ALJ's conclusions and denial of benefits. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Accordingly, the ALJ's decision is AFFIRMED.

TASHIMA, Circuit Judge, dissenting.

The Commissioner's denial of Social Security benefits should be set aside when the ALJ's findings are "based on legal error." *Smolen v. Chater,* 80 F.3d 1273, 1279 (9th Cir.1996). In this case, the ALJ improperly rejected medical findings that Allen was "markedly limited" in several areas related to employment. Because the ALJ's findings were the product of legal error, I would reverse and remand.

*Moore v. Commissioner of the Social Security Administration,* 278 F.3d 920 (9th Cir.2002), involved a similar factual situation, in which a claimant sought disability benefits for a "closed period" preceding his return to work. In *Moore,* the ALJ discounted medical assessments of Moore as disabled, instead relying on evidence of the claimant's eventual return to work as "the most compelling evidence." *Id.* at 924. We rejected the ALJ's reasoning, however, holding that an applicant's employment cannot serve as a "specific and legitimate" reason for rejecting the

opinions of examining physicians that an individual is disabled, unless the employment is "wholly inconsistent" with the claimed disability. *Id.* at 923, 925.

Despite our clear holding that a claimant's return to work is not a basis for rejecting medical evidence of disability, the ALJ here committed an identical error in rejecting Dr. Henderson's evaluation that Allen was "markedly limited" in several areas related to employment. The ALJ rejected the limitations contained in Dr. Henderson's report "because they are contrary to the claimant's own behavior, namely engagement in work activity of a skilled nature." In fact, Allen was able to return to work only with the assistance of an unusually accommodating employer who permitted Allen to take frequent and lengthy breaks. Allen's employment was therefore not inconsistent with Dr. Henderson's assessment that Allen was "markedly limited" in her ability to work without excessive rest periods. Moreover, the record clearly indicates that Allen did not begin her employment until after her closed period of disability ended.

In addition to its attempt to distinguish *Moore,* the majority asserts that the ALJ was permitted to reject Dr. Henderson's medical findings because other examining physicians [1] provided contradictory medical findings. *Id.* The ALJ, however, "may

___

nosed Moore with "moderate developmental disabilities" that "imposed severe restrictions on his ability to function since his mother's death" and rendered him "unable to work" during a two-year closed period of disability, after which he commenced a new job. 278 F.3d at 923. A third examining physician diagnosed him as having "significantly less severe symptoms" toward the end of the two-year disability period, but concurred in the original diagnosis that he was "markedly impaired in many major categories of functioning...." *Id.* Despite the fact that there was no contradictory evidence offered by any examining physician, the ALJ rejected Moore's disability claim, relying primarily on his rec-

ord of employment immediately following the two-year period of disability. *Id.* at 924. We reversed and held that an applicant's employment after a period of disability, unless wholly inconsistent with the claimed disability, is not a specific and legitimate reason for rejecting the opinions of examining physicians. *Id.* at 925.

1. In its discussion of reports from doctors "who examined Allen," the majority cites to Dr. Tiedeman's generic conclusion that Allen's disorder did not rise to the level of a "severe" impairment. Maj. dispo. at ——. Dr. Tiedeman, however, was not an examining doctor.

reject the opinion of a treating physician in favor of a conflicting opinion of an examining physician" only if the ALJ provides "specific, legitimate reasons for doing so." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir.2002) (internal quotation marks omitted). Here, the ALJ's only justification for favoring the other medical evaluations over Dr. Henderson's assessment was Allen's employment, which, as discussed above, is an invalid basis for rejecting a treating physician's findings. The majority's intimation that Dr. Henderson's evaluation can be rejected because it was internally contradictory is incorrect, as none of his findings contradicts his conclusion that Allen was markedly limited in these specific areas.

Accordingly, the ALJ's ultimate finding that Allen's psychiatric limitations are only "mild" in severity is the product of legal error; thus, the Commissioner's denial of benefits should be set aside. *See Smolen*, 80 F.3d at 1279.

I respectfully dissent.